We're calling the case of Matthew Johnson at all versus Governor of New Jersey at all. And, uh, Mr McLean, you're up first. Do you want to reserve any time? Yes, Your Honor. I'd like to reserve three minutes. Okay, that's done. You may proceed. May it please the court. I'm Jared McLean with the new Civil Liberties Alliance. On behalf of the appellants in this case today, I'd like to just highlight two parts of the district court's opinion that have drastically undermined the application of the contracts clause, one that applies to the first step of the analysis and one that applies to the second on the first, whether there's substantial impairment, the district court elevated one indicia of impairment. One way to test the party's expectations going into the contract. That is, whether there was prior regulation in an industry, and it created a world in which once you enter a regulated industry, there's no longer a right to contract free from government interference. Can I interrupt you and get you to talk about burdens of persuasion, though? Real quick. You you rely. If I read your stuff right, you rely on three things. Voluntary cessation, capable of repetition, yet evading review. Uh, and your your your third point, uh, bears on. I should have the the name of it right at the tip of my tongue. Um, but you're your third issue as a as an exception, uh, viral consequences is the collateral consequences. Thank you for saving me from my senior moment. There could struggle to find the word. Um, the burdens of persuasion for each of of those. Would you walk through those with me? Who's got the burden to show, uh, with respect to voluntary cessation? So so, Your Honor, I guess just to back up our primary argument is that this case is not moot to begin with. And on that point, the government in this case, the party asserting mootness would have what this court has called a formidable burden to demonstrate that there's mootness. And if and when the governor carries his burden to show that there is, in fact, mootness, and we're then arguing that one of the exceptions, like voluntary cessation or capable repetition and likely to then the burden would shift to us to then prove that the exception applies. So hmm. Okay. Uh, because I was under the impression. Well, maybe maybe I shouldn't take you to your exceptions first. If you're if you want to deal with your primary argument first, but when just explain to us how if if if the order is no longer in place and it isn't correct, your case is not moot. Our position, Your Honor, is that the case isn't moot because contracts clause cases are are atypical. It's not the normal type of litigation for two reasons. The first is that this isn't a litigation between my clients and their tenants that once the contract dispute is resolved, the case goes away. This this is about, um, whether or not the state has the power to affect certain orders and which brings to the second way the contracts clause cases are different in that the very act of passing executive order 1 28 and it's staying on the books impacts the all contracting parties expectations going forward. Why isn't that? Why isn't that just a reframing of the collateral consequences exception to mootness? Well, the collateral consequences exception collateral consequences. I believe my understanding is that if there's collateral consequences, the case is not moot. It's not actually an exception to mootness. It's a different way. And that goes to the burdens of persuasion. I think when we're in the collateral consequences phase, the burden is still on the government. And then if we're saying this case is moot, but it's capable repetition, then the burden would switch to us. So I think it's important to suss that out. And so in that, let me understand something is your position that the mere fact that the order was passed has some sort of detrimental impact on some hypothetical contracts that haven't even been consummated. It has effect on my client's current contracts. It has an effect on their contracts as they're entering into residential leases. They now have to account for the fact that they can no longer rely on security deposits because well, they can now, right? Unless they have this fear that's coming back. Is that what you're saying? Well, essentially, that's right, your honor. Because if you look at the Troy limited case, in that case, there was the Tenancy Act and the Anti Eviction Act, I believe. And this court was considering the second one of those acts. And this court said there's no longer an expectation that the that the legislature can't step in and pass the second act because there was already this prior act that had not been successfully challenged in court. So by virtue of that first law being able to stand, it just diminished the party's expectations and stopped them from being able to challenge future legislation. When you say been able to stand, this order is gone. It doesn't stand. So your argument is, and I guess has to be, yes, someday it could happen again. It could happen again. Darn it. And we have to price that into all our contracts. So these collateral consequences reverberate ad infinitum into the future. Correct, your honor. And when I say allowed to stand, I mean, it was never successfully challenged in court. So now that's something like you're saying that that all residential landlords have to price into future contracts. And that was something when I spoke with Mr Kravitz yesterday, he now have to raise my rent to account for the fact that I can no longer trust that I can rely on my security deposit. It's in my contract, but the government has stepped in and said, You have no right to rely on that anymore. So So is it the case that that the fact that the government can regulate is background information against which your clients have to negotiate? That's correct, your honor. And I think that that isn't that always the case when you're dealing with landlord tenant stuff. Why is this different now? You're always going to have to deal. I mean, we could posit stuff that they didn't do, but which they theoretically could do. Right. I mean, we could start spinning out hypotheticals. Does Mr Kravitz have to say now that I know that the government can regulate me, this is a collateral consequence. Well, I think that goes to our argument that executive order 1 28 is different in kind. The state of New Jersey has regulated security deposits in the past. You have to keep it in an escrow account that's interest bearing, and you have to return it within a certain amount of time. And there have been all these minor technical laws that you do have to price in when you're contracting, except executive order was completely different in kind. And the government said, You're no longer allowed to rely on security deposits at all. And that's a completely different thing. Isn't that an overstatement? Because as I read it, the tenant was not absolved of their responsibility with respect to the security deposit. It said they could use it to pay rent, but they didn't absolve them of having to pay their security deposit down the line. They didn't absolve them of their responsibility to pay damages to the property, but they did, which is the purpose of the security. But respectfully, Your Honor, that's like the government stepping in and saying your contract says you have to pay in wheat, but you can accept flax. And that's exactly what the states were doing under the Articles Confederation, which calls the contracts clause to be put into place in the first place. The government impairs an obligation to contract when it steps in and says you've contracted to secure your rights in one way, but we're going to change the way that you're able to protect those rights. And that's exactly what we did, what the governor did here. A security deposit is a pot of money that sits there and is a protection of the- We understand what a security deposit is. Why don't you now shift, you got about four minutes, why don't we move to the question of voluntary cessation and capable of repetition at a rate of 80 review. Assume we thought you're wrong about saying this isn't moot. Uh, deal with the exceptions and start with voluntary cessation. What's your best pitch? Our best pitch would be that this case is distinguishable from County of Butler, which Your Honor is well familiar with because in County of Butler, the Pennsylvania had enacted a constitutional amendment that limited the governor's future authority to take that action. And there was a joint resolution by the legislature in this case. Here there was a legislative act as well, right? It wasn't just a withdrawal by executive order. The legislature withdrew this act as well, right? That's correct, Your Honor. And when the legislature passed a 5820 or 5280, whichever it was, and sort of limited the governor's emergency powers going forward, they put a set of restrictions on him. And that's- I'm talking about in this case, there was legislative action, right? Right, right, right. So doesn't that make it square up pretty close, pretty darn close to County of Butler? Until last week, when the governor skirted that legislative action and said that this set of restrictions that you put on me in A5820, I can still enact a public health emergency if I want, and I can take these actions if I want, and I'm no longer bound by the legislature's limitations. That's just exactly what the Secretary of State said in the County of Butler case, said, look, I know what they did, but I'm the Secretary of Health here in this Commonwealth of Pennsylvania, and if I think there's an emergency, I got the power to deal with it. And the court took that into account and said, yeah, this is not a voluntary cessation issue. It just isn't. How are you different from County of Butler on that front? I think that the governor in this case, like you're saying, he's never relinquished the idea that he has the there was a legislative eviction moratorium in place until this month, and it's now expired. And under the governor's own logic for enacting EO 128 in the first place, when there was an eviction moratorium in place, now that there's one gone and now that he's affirmatively stepped up and tried to reclaim his power from the legislature, there's all the more reason to think that now, without an eviction moratorium, he's once again going to say, I need to step in and protect renters. Okay, well, that's your that's your best guess. But at this point, it's a guess, right? That's that's right, Your Honor. And and that's why our primary argument is that this case is not moved in the first place because the government hasn't been able to carry its burden to show that there'll be no impact on my client's current leases and on the value of those leases. Okay, when he declared that when he recently declared the new public health emergency, didn't he also say that that doesn't mean I'm going to do more lockdowns and business restriction? Correct, Your Honor. I think that that keeping the economy open is a separate thing from the from the residential lease orders that he put into place. But, yeah, there was there was no mention in the order one way or the other about the residential leases. Okay. Uh, well, you'll have three minutes on rebuttal. Mr. McClain. Sure. But am I saying your name? Right? Sure. Back. Sharon. Thank you, Your Honor. Sharon Beck. And thank you. May it please the court. Um, in the early days of the pandemic, during an unprecedented public health and economic emergency, Governor Murphy took a modest step to help renters weather the storm. Um, executive order 1 28 allowed tenants to use their security deposit, which under New Jersey law is their own property to pay outstanding rent. And it made clear that tenants remained on the hook for every dollar of unpaid rent or damage to property. Now, appellants asked this court to declare Governor Murphy's actions unconstitutional. But the challenge policy is no longer in effect. Last June, the Legislature passed a law that terminated the lion share of New Jersey's COVID executive orders, including E O 1 28. Um, and article three means this court can't resolve an appeal if it can't grant a plaintiff meaningful relief. That's the case here. So this case is moving. So let me ask you this. Um, when, uh, this issue was being pushed in the state court in Kravitz versus Murphy, the appellate division of the New Jersey Superior Court decided to go ahead and address it on the merits and not to say there was mootness. Should that matter to us? No, Your Honor, because New Jersey courts aren't bound by Article three, and they have a very well one exception that says even if the case is moot, we can still reach the merits of an issue if it's sufficiently important. And so I think that might have been what the court had in mind. That isn't what they said, though, right? They did. They say, Uh, this thing might be moot, but we want to talk about it anyway. Well, they generally alluded to arguments made in, um, the petitioner's papers in that case. And so it's not immediately clear what the grounds were. But, you know, I submit your honor on if you're looking at this case in terms of Article three, well worn, uh, principles of mootness that were applied in County of Butler and the exceptions to mootness that were applied in that case. This is that case on all fours. Um, and what do you make of Mr McClain's argument that his clients suffered collateral consequences? Well, I think the collateral consequences doctrine has come into play where there's a pending action, um, where there would be some kind of determinative legal effect in that other pending action as a result of allowing a lower court decision to stand. Um, that was true in the U. S. Steel case. There was a pending arbitration that would have had. There I believe it was also true in the, um, uh, uh, national Iranian oil case. There was a there were pending federal district court actions there where there would have been a collateral effect. Now, um, I took Mr McClain's letter yesterday to make, uh, lucidly clear. There are no pending damages actions respecting any, uh, tenant who ever invoked E O 1 28. Um, and I of that factual representation, the legal question before this court on the merits the question of whether the E O 1 28 comported with the contracts clause would have no effect on the measure of damages that a landlord could receive in a state law damages action against a tenant. And so there are no collateral consequences. Let's assume you assume we find these cases do we reverse or do we vacate? What do we do here? Affirmative. We affirm it. We vacate. What's the best path forward? Your Honor, we think this case is county of Butler on all forced. And so the remedy in county of Butler, I believe, was backer, and we would not oppose that. Okay. Uh, all right. Let me let me ask a question if I can about, um, the assertion that, uh, these were not impaired at all to begin with, because they had landlords still had a right to take people to court. Is it not the case that the whole purpose of a security deposit is because the transaction costs of having to take somebody to court are significant enough that if you have to take him to court, you really don't have a remedy you. And so people, landlords generally wouldn't take people to court because the it's just not worth the candle. It's not economically sensible to spend the time, money and effort to take somebody to court for, you know, the two or $3,000 or $4,000 of damage that you would have gotten and been able to work with if you've been able to keep the security deposit. So just starting at that baseline level, uh, is it not an impairment of a contract to say to a landlord, you don't get to use that. You got to go to court, which, of course, you won't because the money's too small. Well, your honor, as you know, the test is, is there an impairment whether there's a substantial impairment? And I think the touchstone I would look to first is what have courts found to be substantial impairments or not substantial impairments in the past. And I think the Troy case is illustrative. Um, that a lengthening of a period of against eviction protections from 8 to 40 years was found to not be a substantial impairment. And that's a case from the Third Circuit. The Supreme Court as early as 1921 found that rent control was not a substantial impairment. And, and, um, so it's just not that much money. So it doesn't matter if we take that out of your pocket because it's not much. That's sort of the approach because I think you'd have to concede that if it's in fact the case that the dollar amounts here and they don't seem to argue differently, the dollar amounts here are not large. That's the whole point. That's the entire point of a security deposit. It's not a lot of money, but it's enough money. It's meaningful to me and I can't take you to court to get it. So I'm gonna make you give it to me up front. And now the ruling is you don't get that. We've the amount of money is small. By definition, you're saying it can't be substantial. No, your Honor, hasn't been that because the amount of money is small, there isn't a substantial impairment. It's been looking at all the factors that the Supreme Court in this court have put following the extent of regulation. The fact that a landlord, um, may seek the full measure of damages in a damages action as they were allowed to before E. O. 1 28. And for the first time yesterday that the Kravitz is did seek, um, in damages actions. And by there, they've heard that they received all but $200 of the amount that they would have received had they been able to simply take this damages action. I don't think that that fact is determinative, but I think it's illustrative. Well, and we don't we have no idea. Do we what it cost them in terms of their time, their money, their effort, attorney's fees, etcetera. Right? No, your Honor. I mean, none of none of that is really in record, but I'm pointing out that the E. O. 1 28 preserved landlords, ordinary remedies, and it didn't relieve a tenant of $1 of liability. And I think that goes into the mix, and it contrasts quite a bit with laws that do forgive debts, um, which I think is the archetypal, uh, version of what would would constitute a potential contracts clause violation. Is the fact is the fact that the Northeast and much of the country is in the midst of, uh, dramatic surge in cases. Uh, does that bear it all on the, uh, the likelihood of a return of E. O. 1 28 or something like it? Your Honor, I can make the same representation that was made by counsel to the governor in the county of Butler case that notwithstanding current circumstances, there is no reasonable expectation that, um, an order like E. O. 1 28 will be reimposed. Vaccines, therapeutics, increased knowledge about Cove in 19. And I would note most markedly a dramatically improved economy have fundamentally changed the circumstances and the landscape of facts that necessitated E. O. 1 28. And so there's no reasonable expectation. Of course, I cannot, Your Honor, forswear the possibility that there could be a novel Ebola virus some some day in the future. God forbid that would require other emergency actions. But it's pure speculation at this point to suggest that there would need to be something like E. O. 1 28. Let me ask a little bit different question. If that day were to arrive in the sometime in the future, um, is an alleged contract clause violation cognizable as a section 1983 claim? I'd like I'd like to hear from Mr McClain on that, too, when it's his turn. Your Honor, as you as you know, the issue hasn't been raised in these papers. Um, and so, uh, I I don't want to do your honor to answer that question without having looked at it. I would be. I would just be guessing. I would reflexively say no, Your Honor, but I'd spare you that. Um, so I'm sorry, Your Honor. I don't have an answer to that question. Okay. Okay. Uh, any other questions? Judge Restrepo or Judge Porter? No. All right. Thank you very much, Mr McClain. Your rebuttal, please. Thank you, Your Honor. Uh, Judge Porter on the 1983 question. I apologize. I did not prep that for this argument because the government didn't raise it, but we did brief it in our motion to dismiss papers below. So I do have fully fleshed out briefing on that, if your honor would like to refer to it on, um, a quick point on the merits. Um, counsel for the governor has has said that because this is a heavily regulated industry, there's reason to expect that this type of change would happen on the law and the cases that he relies on Troy and he mentioned the beaks case from the 1920s. Those were cases where the court was careful to say that the relationship at the point of the time the law was passed was statutory in nature. The contractual rights had already been destroyed by that point, and the parties were operating pursuant to statutory rights as much as they were contractual rights. And that was the case in the in the Kansas power and light case as well. They knew that there were price controls over the price of natural gas and their contract price that in and the contract actually had terms to adjust for future regulation over the price controls of natural gas. Those are the types of cases where courts have said that past regulation gives rise to an expectation of future regulation, not just a court blanch. This industry has been regulated before in some way, so you have to expect all future regulation in that industry. I think the Second Circuit expressly reject that in the Melinda's decision and in the A. A. G. L. A. Case out of the Ninth Circuit that my opposing counsel relies on the trial court in that case also found that there was no reason prior to Kobe 19 that landlords could have ever expected this type of change to their contract. The Ninth Circuit didn't reach that question, which we believe under speen is a had to reach, and the Supreme Court has now called for a response to the cert petition from the landlords in that case. So what what kind of what kind of or if we ruled in your favor, what would the what would the order look like? Would it say you may never again do this, Governor? I think what would it look like? I think it would look a lot like the Melinda's decision that the Second Circuit issued where where you say on the 12 B six record there was not there was no reason here to think that landlords could have expected this exact type of regulation. And well, wait a second. We would have to write a judgment. And right, we'd have to. Presumably there would be an order, a judgment order. What would the judgment order say? It wouldn't say landlords could never expected this. It would do something. What would the would declare that Executive Order 1 28 violated the contracts clause. But Executive Order 1 28 no longer exists, but it's gone. It's over. It's legislatively and by executive action withdrawn. So you're asking us to declare something that no longer exists to be unlawful because it still impacts our party are our clients expectations when they're contracting. Yeah, that's that's our primary argument here at it. Sorry if I don't remember. But are we dealing with leases in this case that predated Executive Order 1 28 or or do we have leases that were that were consummated after 1 28 was issued? And so I guess because they couldn't for a period of time, there's no security deposit requirement or what? What's the answer to that question? So the the Johnson's and the Kravitz is had all all all plaintiffs had leases in place at the time. You know, 1 28 went to affect after that point. Yeah, go ahead. And after that point, um, Mr. Um, Mr. Uh, I keep wanting to call him Van Dyke, but I entered into a entered into a new lease and hook. And did that at least have a security deposit provision? Had the exact same security deposit provision as the prior lease. I believe he entered it into in June 2020, which was okay. Okay. So for all of those leases, if the security deposit provision was, as it were suspended for the period of time when Executive Order 1 28 was in effect when Executive Order 1 28 was no longer in effect, they reverted to the original status quo. And the security deposits are enforceable, right? I mean, I don't see half. I don't see how things have changed for you for your clients now that the executive order is no longer in effect. Well, as Mr Kravitz put it, Your Honor, it changed for him because he now know that the security deposit gives landlords a sense of security. And you know, 1 28 has removed that security from the security deposit. And and because and that's because and that's because something like 1 28 could come around again. That's correct, Your Honor. And under the government's own theory, the very act of pass of this type of, um, executive order gives rise to an expectation that it will happen again. And it's the responsibility of my clients to price that in or they're going to be in a much worse position next time around than they were this time. And this time, mind you, it's sister court still ruled against him and said they didn't have an expectation that this law wouldn't come about. So the next time this happens, it's going to be much worse. And a final point, Your Honor, for this was the first time that I heard that the that the state won't oppose vacate her. And our position all along has been that, um, if this court were to determine that it's it's for reasons beyond our control, and we shouldn't continue to be bound by the district court's opinion and vacate is the proper remedy. Great. We have the parties agreeing on that. Hey, it's great to see agreement. Uh, okay. Thank you very much. Counsel for your argument today. Much appreciate. We've got the matter under advisement. We'll ask Mr Cain to go ahead and, uh, close this session of the court.